**EXHIBIT 3**

02/18/2015  05:34   19886350151        HART SALES TEAM              PAGE  05/32

## ABSOLUTE ASSIGNMENT AND SECURITY AGREEMENT
### (THE "AGREEMENT")

I, Yolanda Keyes as Conservator of the Estate of Randy Jackson, ("I", "Me" or "Seller") am entitled to certain periodic payments (the "Periodic Payments"), which I am receiving due to the purchase of a self-owned annuity policy. The Periodic Payments to be paid to Me through an annuity issued by MetLife Insurance Company USA (the "Annuity Issuer"). The Periodic Payments are due to Me on the account of my purchase of an annuity and is not the result of a structured legal settlement.

In consideration of the mutual promises contained here, I agree as follows:

**A. Assignment Provision.** I agree to sell to DRB Capital, LLC (the "Purchaser") through an assignment, all of my rights to and interest in the following payments, which I am due to receive under the Annuity: **4 annual payments of $19,699.50 commencing on or about March 6, 2017 and ending on or about March 6, 2020** (the "Assigned Payments"). In exchange for selling and assigning to the Purchaser my rights to receive these payments, the Purchaser shall pay Me the sum of: **$60,006.05** (the "Assignment Price"). If any of the individual Assigned Payments are less than the Periodic Payments due under the Annuity from the date of this Agreement forward in time, I may be entitled to receive the Over-Payment (as defined below) in accordance with Section G of this Agreement.

**B. Other Obligations and Promises.** I hereby make and agree to the following unconditional representations, warranties and promises, which are unconditionally binding on me from the moment I sign this Agreement:

1. I am of sound mind and not under or subject to duress, fraud or undue influence. I am a competent adult and understand and accept the consequences of my actions.

2. No one other than Me has any interest or claim of any kind or nature in, to or under the Assigned Payments I am assigning hereunder.

3. I am not indebted to anyone that would in any way affect either the assignment of the Assigned Payments referenced above or the Purchaser's absolute rights to receive the Assigned Payments.

4. I agree to conduct my affairs from the moment I sign this Agreement so as to ensure that the Purchaser obtains all of the benefits of the assignment contemplated hereby, including, without limitation, timely receipt of the Assigned Payments. This means, among other things, that I agree not to enter into agreements with third parties to sell my rights to and/or interest in any portion or all of the Assigned Payments.



EXHIBIT B

5. I agree to cooperate with the Purchaser and provide any additional documentation and information as the Purchaser may reasonably require from Me regarding the Settlement Payments and the transaction contemplated herein.

6. The Periodic Payments are due to Me on the account of my purchase of an annuity and is not the result of a structured settlement.

7. The Periodic Payments are not the type referenced in MCLS proc § 691.1301 (2007).

8. The transaction contemplated hereby is an absolute sale of the Assigned Payments and I intend that it be treated as a sale and not as a secured loan.

9. I acknowledge that documents underlying an annuity may contain language –and based upon information and belief, do contain such language– prohibiting my right or power to accelerate, defer, increase, decrease or assign my annuity payments. Should the pertinent documents relating to the Settlement or the Annuity contain a provision with this or similar language, I knowingly waive any such provision and claims relating to such provision that I may have. Accordingly, I agree and promise that I will never claim in any venue that the rights to and interest in the Assigned Payments are not transferable, or that the prohibitory language mentioned before renders void this Agreement.

C. **Default Provision.** I understand and agree that I will be in breach of my obligations under this Agreement in any of the following situations:

1. Any of the representations, warranties, and promises set forth in Section B at any time turn out to be untrue.

2. I fail to perform the promises I made under Section B.

3. The Annuity Issuer refuses or fails to make any one or more of the Assigned Payments as a result of any act by Me or my representatives.

4. I fail to forward promptly to the Purchaser any Assigned Payments received by Me from the Annuity Issuer.

5. If at any time, I fail to fulfill any other obligation of mine under this Agreement.

D. **The Purchaser's Obligation to Pay Me.** The Purchaser's obligation to pay Me the Assignment Price depends upon the following conditions being satisfied unless waived by the Purchaser:

1. The Purchaser shall be satisfied, in the Purchaser's sole discretion, that there are no claims, liens or interests of any kind or nature whatsoever that do or may affect the Purchaser's rights to or interest in the Assigned Payments and the Purchaser's ability actually to receive same on the dates and in the amounts set forth in Section A.

2. The Purchaser shall be satisfied that the representations, warranties and covenants set forth in Section B are true in all material respects.

3. The Purchaser shall have received the acknowledgment from the Annuity Issuer satisfactory to the Purchaser, in the Purchaser's sole discretion, confirming either (i) the change of ownership of the Annuity from Me to the Purchaser or (ii) an irrevocable change of payee and beneficiary.

E. **Security Interest.** To secure the performance of my representations, covenants and warranties set forth herein, and only to the extent permitted by law, the Purchaser and I intend to create a security interest –under Article 9 of the Uniform Commercial Code of my state of domicile– in my rights to and interest in the Assigned Payments, which rights have been assigned to the Purchaser as general Intangibles under Article 9 of the Uniform Commercial Code of my state of domicile. This Agreement shall also function as a security agreement. This security interest secures payment of the rights assigned and performance of my obligations under Section B above, the Purchaser may direct any account debtor, obligor on an instrument, including, without limitation, to DRB Capital, LLC or the Annuity Issuer, to make periodic payments directly to the Purchaser as contemplated by the Uniform Commercial Code. The Purchaser may file a UCC-1 financing statement to perfect its rights hereunder.

F. **Authorizations.** By signing this Agreement:

1. I expressly authorize the Purchaser to endorse on my behalf any and all checks payable to me with respect to the Assigned Payments, to the extent necessary for the consummation and enforcement of the transaction contemplated in this Agreement. This authorization shall survive my death or disability.

2. I expressly authorize the Purchaser to send me offers, requests and information for potential future transactions, including sending up to 30 texts a month to my mobile phone number using an autodialer. My consent is not a condition of any future sale or purchase. I understand that, at any time, I can withdraw my consent by either sending a written notice to the Purchaser as provided in Section O, or I can reply to a text from the Purchaser with "STOP". I can also request additional information by texting "HELP". I understand that message and data rates may apply to the texts I send and receive.

G. **Payments or Amounts Received by Party Other Than Party Intended to Receive Such Payments of Amounts.**

1. In the event that I receive any of the Assigned Payments or any portion thereof prior to the Purchaser's payment of the Assignment Price to Me, the Assignment Price shall be reduced in like amount and the terms of this Agreement regarding the payments to be assigned shall be deemed to be adjusted accordingly.

2. In the event that I receive any of the Assigned Payments or any portion thereof after the Purchaser's payment of the Assignment Price to Me, I will forward such amounts promptly to the Purchaser.

3. The parties recognize that the Individual Periodic Payments due under the Annuity from the date of this Agreement forward may exceed the amount of the Assigned Payments being sold to the Purchaser hereunder (the difference being hereafter referred to as the "Over-Payment"). The Purchaser agrees that to the extent that the Purchaser receives payments under the Annuity in excess of the Assigned Payments it will, within 7 days of receipt of such Over-Payment, remit same to Me by regular mail to my address. If I wish the Over-Payment to be sent by means other than regular U.S. mail, then I hereby authorize the Purchaser to deduct from the Over-Payment amount a reasonable fee for such alternative means of delivery.

H. **Escrow.** The Purchaser may (but is not required to) and is hereby authorized to hold in escrow an amount equal to the Assigned Payments until such time as the Purchaser shall have received the acknowledgment from the Annuity Issuer satisfactory to the Purchaser, in the Purchaser's sole discretion, confirming either (i) the change of ownership of the Annuity from Me to the Purchaser or (ii) an irrevocable change of payee and beneficiary. Upon receipt of such acknowledgement, the Purchaser will send Me any amounts held in escrow (the "Initial Release"), minus an amount equal to payments sent to Me by the Annuity Issuer after the Effective Date, if any. Notwithstanding the preceding sentence, if the acknowledgement from the Annuity Issuer is received by the Purchaser before the expiration of a period ending 120 days after the Effective Date, the Purchaser may (but is not required to) continue to hold in escrow an amount equal to payments not yet received from the Annuity Issuer that are or will become due before expiration of the 120-day period, if any (the "Interim Payments"). In such case, the total amount of the Interim Payments will be deducted from the amount of the Initial Release, to be held in escrow. As soon as the Purchaser begins to receive payments directly from the Annuity Issuer as contemplated hereunder, the Purchaser will send Me any amounts held in escrow at the time (the "Final Release"), minus an amount equal to all Interim Payments received by Me prior to the Final Release, if any.

I. **Authorization to Discharge Liens and Charges.** The Purchaser shall be entitled to discharge any adverse claims against Me or any of the Assigned Payments whether or not such adverse claims are disclosed. The Purchaser may, provided the Purchaser furnishes prior written notice to Me, pay any and all amounts necessary or, if the Assignment Price has been deposited into an escrow account, instruct the escrow agent to pay any and all amounts necessary to discharge such liens or other adverse claims, and the Assignment Price shall be reduced by the amount of any such payment.

J. **Applicable Law.** Except as otherwise required by applicable statutory law, this Agreement shall be governed by and interpreted in accordance with the law of my state of residence on the date of this Agreement.

K. **Agreement to Arbitrate.**

1. **Agreement.** The parties agree that any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement, to the negotiations thereto related or to the breach thereof, or to the formation, scope, validity and/or enforceability of this agreement to arbitrate or the Agreement (each, a "Claim"), as well as the question of arbitrability of any such Claim, *shall* be settled by binding arbitration.

02/18/2015 05:34 19896358151 HART SALES TEAM PAGE 09/32

2. **Initiation of Arbitration.** Either party may initiate an arbitration by serving the other party to this Agreement with a written demand for arbitration. The arbitration of a Claim must be initiated within a reasonable time after the Claim has accrued. In no event shall a Claim (or a Claim raised in a counter-demand) be entertained by the arbitrator if the demand for arbitration (or counter-demand, as the case may be) is filed after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations. If a party raises untimeliness of the filing of the demand or counter-demand as a defense, the arbitrator must resolve that question prior to holding the hearing on the merits of the corresponding Claim. If either party refuses to arbitrate and the other party is required to seek court intervention to compel arbitration, the party refusing to arbitrate shall be responsible for paying the fees and expenses (including attorneys' fees) incurred in seeking an order to compel arbitration.

3. **Administration.** The arbitration shall not be administered by any arbitration provider organization but shall be privately administered by the arbitrator appointed pursuant to this Section K. Notwithstanding the preceding sentence, the Commercial Rules of the American Arbitration Association (the "AAA Rules") shall govern the arbitration process and the arbitrator must follow the AAA Rules, except those regarding the administration of the arbitration process by the American Arbitration Association (the "AAA") and those as to which this Section K provides otherwise. In the case of inconsistencies between the terms of this Section K and the AAA Rules, the terms of Section K shall govern.

4. **The Arbitrator.** The arbitration shall be held before a single arbitrator from the roster of neutrals of the AAA, to be selected and appointed through the "AAA Arbitrator Select, List and Appointment" service (the "Service"). The party initiating the arbitration must submit a request for the Service with the AAA no later than 10 calendar days after the initiation of the arbitration. If an appointed arbitrator needs to be replaced for any reason, the selection of the replacement will also be made through the Service. Each party is responsible to pay the arbitrator directly for 50% of the arbitrator fees as these become due.

5. **Arbitration Process.** The arbitration will be held in the largest city of my state of residence. Discovery, specifically including interrogatories, production of documents and depositions, shall be allowed at the discretion of the arbitrator and, if permitted, shall be conducted in accordance with, and governed by, the Federal Rules of Civil Procedure.

6. **Waivers.** No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent of the parties hereto, containing a specific reference to this Agreement and signed by the entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any Claim in question not described in the written consent or with a person or entity not named or described therein. There shall be no right or authority for any claims to be arbitrated on a class action basis or on any basis involving claims brought in a purported representative capacity on behalf of the general public or other persons or entities similarly situated. I UNDERSTAND THAT I WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A

MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING OR RELATING TO ANY CLAIM AND THAT OTHER RIGHTS THAT I WOULD HAVE IF I WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION.

7. **The Award.** The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any competent court with jurisdiction. Such award shall identify the substantially prevailing party and shall include fees and expenses, including attorneys' fees, any expert fees, arbitrator fees and costs of arbitration, for the substantially prevailing party.

L. **Effective Date.** This Agreement shall be effective from the date it is signed by Me.

In witness whereof I hereunto set my hand.

_____
Yolanda Keyes as Conservator of the Estate of Randy Jackson

STATE OF __Michigan__
COUNTY OR CITY OF __Lapeer__

On the __18th__ day of __February__, in the year __2015__ before Me, the undersigned, personally appeared Yolanda Keyes as Conservator of the Estate of Randy Jackson personally known to Me or proved to Me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to Me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary

Accepted:

DRB Capital, LLC
1625 S. Congress Ave., Suite 200
Delray Beach, FL 33445

By: _____
Title: _____
Date: _____

KIMBERLY L HART
Notary Public - Michigan
Sanilac County
My Commission Expires Jul 23, 2019
Acting in the County of Lapeer

2/18/2015

MetLife Insurance Company USA
2025 Leestown Road Suite J
Lexington, KY, 40511
Attn: Annuity Payout Division

RE: Contract #: 90003287RIN
Yolanda Keyes as Conservator of the Estate of Randy Jackson
2934 Carina Drive
North Branch, MI, 48461

To Whom It May Concern:

The payments that I am proposing to transfer for contract# 90003287RIN are as follows:

*4 annual payments of $19,699.5 commencing on or about March 6, 2017 and ending on or about March 6, 2020*

The above referenced payments will be assigned to DRB Capital, LLC with an address of P.O. Box 850001, Attn: Dept #210, Orlando, FL 32885-0210. Taxes are NOT to be withheld.

Please fax a confirmation acknowledgment letter to DRB Capital, LLC at (866) 704-0772 with a mailing address of DRB Capital, LLC; 1625 S. Congress Avenue, Suite 200, Delray Beach, FL 33445.

If you have any questions, please do not hesitate to contact me at *(517) 200 - 8680*

Thank you,

_____
Yolanda Keyes as Conservator of the Estate of
Randy Jackson

Date: 2-18-15

_____
DRB Capital, LLC
Date: 2.19.15

From DRB Capital 1.561.982.3551 Tue Feb 24 09:00:57 2015 MST Page 3 of 7
02/18/2015 05:34 19896350151 HART SALES TEAM PAGE 17/32

2/18/2015

MetLife Insurance Company USA
2025 Leestown Road Suite J
Lexington, KY, 40511
Attn: Annuity Payout Division

RE: Contract #: 90003287RIN
Yolanda Keyes as Conservator of the Estate of Randy Jackson
2934 Carina Drive
North Branch, MI, 48461

To Whom It May Concern:

I am writing to request an Irrevocable change of ownership, beneficiary, and payee for contract # 90003287RIN. The new owner, beneficiary and payee will be DRB Capital, LLC with an address of P.O. Box 850001, Attn: Dept #210, Orlando, FL 32885-0210. The company EIN is 90-1021825. TAXES ARE NOT TO BE WITHHELD.

Additionally, I hereby authorize the release of any contract documents, including a copy of the annuity contract and a confirmation letter of the changes to DRB Capital, LLC via fax # (866) 704-0772 with a company mailing address located at:

DRB Capital, LLC
1625 S. Congress Ave, Suite 200
Delray Beach, FL 33445

I, Yolanda Keyes as Conservator of the Estate of Randy Jackson, hereby authorize DRB Capital, LLC, permission/clearance to obtain, discuss and communicate fully with MetLife Insurance Company USA regarding this policy on my behalf. In return, I authorize MetLife Insurance Company USA the authority to discuss, communicate and comply fully with a DRB Capital representative regarding this policy.

If you have any questions, please do not hesitate to contact me at (517) 260 - 8680.

Thank you,

Yolanda Keyes as Conservator of the Estate of Randy Jackson

STATE OF Michigan   COUNTY OR CITY OF Lapeer

On the 18 day of February, in the year 2015 before Me, the undersigned, personally appeared Yolanda Keyes as Conservator of the Estate of Randy Jackson personally known to Me or proved to Me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to Me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____  My Commission expires on: July 23, 2019
Notary

KIMBERLY L HART
Notary Public - Michigan
Genesee County
My Commission Expires Jul 23, 2019
Acting in the County of Lapeer

From DRB Capital 1.561.982.3551 Tue Feb 24 09:00:57 2015 MST Page 4 of 7
02/18/2015  06:34   19996350101          HART SALES TEAM              PAGE  18/32

# MetLife
## Annuity Service Request Form

MetLife Insurance Company of Connecticut

### 1. Contract Information: - Required for all requests

Contract Number(s): 900032289RIN

Name of Annuitant: Randy Jackson

Contract Owner(s) Name: Yolanda Keyes as Conservator of the Estate of Randy Jackson

Contract Owner Social Security Number/TIN:

Daytime Phone: (517) 200-8680

### 2. Address Change

Change Address of:
- [ ] Owner
- [ ] Beneficiary

Please provide new address information in the section to the right.

Address:
City, State, Zip Code:
If the Address of a Beneficiary has changed, please also identify which beneficiary.
Beneficiary Name:

### 3. Name Change/Correction

This section is to be used for a change in *Legal* name, NOT a change in ownership. Please print.

Note: If reason is other than correction of spelling, attach copy of legal evidence.

| Previous Name: | New Name: |

- [ ] Correction to:
- [ ] Change to:

Reason for Name Change/Correction:

Name of
- [ ] Owner
- [ ] Annuitant
- [ ] Beneficiary

Previous Signature of Owner/Annuitant
X
New Signature of Owner/Annuitant
X

NOTE: Ownership and/or Beneficiary changes may result in the termination of the Guaranteed Minimum Withdrawal for Life Benefit, if applicable. Please see your Contract and prospectus or contact your financial representative for more details.

### 4. Owner or Custodian Change

Please note: If the beneficiary is not changed using Section 3 on the next page, the beneficiary designation from the previous owner will remain in place on the annuity contract unless and until the new owner changes the beneficiary. On Custodial IRA to non-Custodial IRA ownership changes, if the beneficiary individuals are not provided, the estate of the new owner will become the sole primary beneficiary on the contract.

If requesting a change/correction to the name of the current owner/annuitant, please complete Section 3 – Name Change. Changes to ownership may be made to non-qualified contracts only. If adding or removing a custodian or changing to a new custodian, please obtain signatures from previous and/or new custodians. For joint ownership changes, please provide notarized documents.

Any Owner change, where the new Owner would report income under an SSN/TIN that is different from the current Owner's, or current Owner's spouse's SSN, will result in a taxable event (with the exception of changes between Custodial IRA's and personal IRA's).

Change Owner to:
- [ ] Individual
- [ ] Joint Owners
- [ ] Trust +
- [ ] Custodian
- [ ] Other Non-Natural Entity +

Name of new Owner/Joint Owner/Custodian (use of joint name as a single owner on ownership records):
DRB CAPITAL, LLC Attn: DEPT # 210
Social Security Number/TIN: 90-1021625
Daytime Phone: (561) 982-3551 3340
Address: PO BOX 850001
City, State, Zip Code: ORLANDO, FL 32885-0210

Date of Birth:
Trust Date:
Gender: [ ] Male [ ] Female [ ] Entity

- [ ] Add Joint Owner
- [ ] Change Custodian

Please provide new Owner, Joint Owner or Custodian information and signature(s) in the sections to the right. Please review the current beneficiary designation on the contract and make any necessary changes in Section 3.

Under penalties of perjury, I certify that the number shown above is my correct Taxpayer Identification Number and that I am not subject to backup withholding. (Cross out any part of this statement that is not applicable.)

Signature, with title (if applicable), of New Owner/Joint Owner
X

Signature of previous custodian to release custodial ownership
X

Signature of new custodian to accept custodial ownership
X

Note: The existing Contract Owner(s) must sign in Section 8. "Non-Natural Entity requires additional Form # L-75450, Disclosure and Acknowledgement for Transfer of a Non-Qualified Annuity by an Individual to a Non-Natural Entity. + Trust-owned contracts require additional form ANNTRUSTEECERT, Trustee Certification for Annuity Products, to be returned with request.

L-25032U Rev. 7-08    1 of 2

From DRB Capital 1.561.982.3551 Tue Feb 24 09:00:57 2015 MST Page 5 of 7
02/18/2015  05:34   19896358151         HART SALES TEAM                    PAGE  20/32

## 5. Beneficiary Change

If requesting a change/correction to the name of an existing Beneficiary, please complete Section 3 – Name Change.

If this is an Employer-sponsored contract, any beneficiary changes must be made through the Plan Trustee, Plan Administrator, or Employer.

If a Trust is designated, be sure to provide the complete Trust name, Trust date, and Trustee name.

Unless otherwise indicated, beneficiaries of like class shall share equally with rights of survivorship.

Please note that the beneficiary of any Custodial IRA must be the custodian.

Please indicate the changes you wish to make to the Beneficiaries for your contract.

| Name | | Relationship | SSN/TIN | DOB | Pct |
|---|---|---|---|---|---|
| DRB Capital LLC Attn: Dept #210 | ☐ Primary ☐ Contingent | Business | | | |
| Address: PO Box 850001 Orlando, FL 32885-0210 | | | | | |
| Name | ☐ Primary ☐ Contingent | Relationship | SSN/TIN | | Pct |
| Address | | | | | |
| Name | ☐ Primary ☐ Contingent | Relationship | SSN/TIN | | Pct |
| Address | | | | | |
| Name | ☐ Primary ☐ Contingent | Relationship | SSN/TIN | | Pct |
| Address | | | | | |

Trust Name _____  Trust Date _____  Trustee Name _____

Comments or other changes:

NOTE: Percentages for all Primary Beneficiaries must total 100% and percentages for all Contingent Beneficiaries must total 100%.

## 6. Case Change:

| Old Case Number | New Case Number | New Case Name | New Case Address |
|---|---|---|---|
| | | | |

## 7. Financial Representative Change:

Name of new Financial Representative: _____
Financial Representative's Social Security Number: _____
Company Name: _____  Phone number: _____
Company Address: _____  Branch number (if applicable): _____

## 8. Signature(s) - Required for all requests

I, the Contract Owner referenced in Section 1, hereby request that the Company, subject to the provisions of my Contract, process the changes indicated on this form.

Signature of Owner (joint if applicable) _____  Date: 2-18-15
Signature of Joint Owner _____  Date: _____
Agreed (Signature of Irrevocable Beneficiary or Assignee) _____  Date: _____

Notice: No agent or representative of the Company is authorized to alter, change or waive any of the terms or conditions of this form or to bind the Company by any statement or representation. The Company suggests that you consult your own attorney, accountant or tax advisor for information relating to federal and state income tax liabilities that may be incurred as a result of any changes to your policy. An acknowledgment will be forwarded upon completion of the change(s) requested herein.

### Mailing Instructions

| Mail this form to: MetLife P.O. Box 295 Des Moines, IA 50306-0295 | Overnight mail only: MetLife 4700 Westown Parkway, Ste. 200 West Des Moines, IA 50266 | Fax to: 860-308-3979 |
|---|---|---|

LQ5822H Rev. 7-05                    2 of 2

MetLife Insurance Company of Connecticut     Disclosure and Acknowledgement for Transfer of a Non-Qualified Annuity by an Individual to a Non-Natural Entity

_____ ("Owner"), the holder of a non-qualified annuity contract issued by MetLife and the undersigned, on behalf of _____ (corporation or other non-natural entity) ("Assignee") have each indicated their intent to complete a transfer of the annuity contract from Owner to Assignee. Please note the following:

Generally, the tax treatment of an annuity contract owned by a corporation or other non-natural entity requires the owner to include in its taxable income the "Income on the contract" for each taxable year. That is, the earnings on the contract (the increase in the value of the contract during the year as adjusted for new premium paid and withdrawals made during the taxable year) will not be tax deferred. As such, Assignee will be responsible for any tax consequences which may result, including reporting the income on the contract for each year on its tax return for each such taxable year, as mandated by Sec. 72(u) of the Internal Revenue Code (IRC). Each year, MetLife will provide an annual statement of the account as of December 31 showing account activity for the calendar year. Such statement will indicate the contract earnings for that year that can be used for determining the income in the contract which must be included in Assignee's gross income on its tax return. In addition, Owner will be responsible for any taxes due at the time of the transfer (the earnings which have built up from the issuance of the annuity).

Upon the death of the Annuitant, under the terms of the contract, we will pay the named beneficiary. The payment of the account balance to the beneficiary must be made in accordance with the terms of the annuity contract. Payment of the death benefit to the beneficiary may be taxable. Owner and Assignee acknowledge that because the annuity will be held by a non-natural entity, the death benefit payment rules under IRC Sec. 72(s)(6) will require distribution upon the death of the Annuitant even if a Contingent Annuitant was named when the contract was issued. Therefore, it is suggested that an analysis of the beneficial designation be made prior to the transfer of the annuity contract to Assignee.

We strongly suggest that you consult your legal counsel and tax advisor regarding advisability of the transfer and the resulting tax, legal and financial planning implications before completing the transfer of this contract.

Please indicate below that you have read, understand and acknowledge the above by signing below

X _____    Yolanda Keys _____    _____
Owner Name (Print)                Signature                               Date

_____    _____
Authorized Signature of Company/Assignee Representative      Date

_____
Print Name, Title and Company/Assignee

L-08450 Rev. 12-07